Moncure, P.
delivered the opinion of the court.
The controversy in this case is about a bond or note in these words:
“On demand we promise and oblige ourselves, heirs, &c., to pay Jacob Ammon, guardian for legatees of Jacob B. Argenbright, the sum of nine hundred and thirty-six dollars and sixty-three cents for value received, as witness my hand this 1st January 1853.
Henry Miller, [Seal.]
Jas. H. Kite, [Seal.]”
The controversy is between the wards, or late wards, of said Jacob Ammon, five in number, to wit: Christina J. Ergenbright, alias Argenbright, and others, children, described in said bond or note as “legatees of Jacob B. Argenbright,” and the said guardian’s representatives, he being dead; and the question is, whether the loss of the money due upon the bond or note should fall on the said wards, or on the estate or representative of the said guardian; the debtors in said bond or note having become insolvent, without having paid the same.
The commissioner by his report charged the guardian with the debt; but made an alternative statement *492 charging each of the five wards with one-fifth of the debt. The court below, on the 24th day of January 1873, being “of opinion that the estate of Jacob Ammon ought not to be held responsible for the debt due from Henry Miller and Joseph H. Kite to said Afiimon as guardian” aforesaid; “neither the said Jacob Ammon in his lifetime, or his administrators, having been guilty of such negligence or mala Jides in regard to said debt as to justify charging said estate of Jacob Ammon therewith;” confirmed the said alternative statements, and decreed accordingly. From that decree this appeal was applied for and obtained.
In the petition for the appeal three errors are assigned :
“ 1st. Because the other statement of commissioner A. M. fiewman, which charges said Jacob Ammon’s estate with the Miller and Kite debt of $936.65, should have been confirmed, and not the said alternate statement, which was confirmed.
2nd. Because, had suit been instituted within a reasonable time, the said Miller and Kite debt might have been secured and made; and that by reason of gross negligence on the part of said guardian and his personal representatives, said debt has been lost.
3rd. Because, before any suit was instituted, said note of Miller and Kite was barred by the statute of ■limitations.”
The third assignment of error is immaterial, in the view we propose to take of the case, and no further notice will therefore be taken of it.
Three witnesses were examined in the case. Two of them in behalf of the representatives of the guardian, and one in behalf of the wards. First, Henry Miller, the principal debtor, was examined in behalf of the guardian’s representatives. He testified *493 that he gave his bond to Jacob Ergenbright three or four years before his death for a lot of hogs, gave no security in the bond, and was requested to give none. After the death of Mr. Ergenbright, this bond came into the hands of Jacob Ammon, as tbe guardian of said Ergenbright’s children. Witness then took up the bond he had executed to Jacob Ergenbright, and executed the bond or note which is the subject of controversy in this suit to Jacob Ammon as guardian, with Joseph H. Kite as security. At the date of the bond or note, on the 1st of January 1853, and up to 1861, witness had property over and above what he owed. Lost during the war, by the sale of land for Confederate money, in negroes, horses, crops, debts, &c., not less than from $22,000 to $25,000. Thought his property, at the time he gave his testimony, would not meet his debts. His inability to pay his debts was the result of losses sustained during the war. Thought his surety, Joseph H. Kite, was very good. He owned a good deal of property, but lost the greater portion by fire and the flood of September 1870.
On cross-examination, the witness said that if the guardian had instituted suit and obtained judgment previous to the war, the debt could have been secured. If he or his personal representative had instituted suit, and obtained judgment since the war, and previous to September 1870, witness thought the debt would have been secured. In October, or November of that year, Kite’s property was sold under execution, and produced some $600 or $700. Y. C. Ammon, one of the representatives of Jacob Ammon, called on witness during the war, in 1862 or 1863, witness thought, before he lost his property, and said that he, Y. C. Ammon, had gotten in his hands, after the death of his father, the bond witness owed Jacob Ergenbright’s *494 heirs, and stated that he, Y. C. Ammon, wanted a portion of the money to pay to some of the heirs. Witness promised to pay him a portion at some future time, and remarked, if he had doubts as to the debt, witness would give him additional security; but he seemed to be satisfied with the witness and Kite.
2nd. Joseph A. Hammon, sheriff, or deputy sheriff of Rockingham county, was examined in behalf of the wards. He testified that he had an execution in the name of John Argabright’s adm’or v. Henry Miller and Joseph H. Kite, for $670.80 and interest and costs, and made on said execution $715.07, at a sale of property levied on October 28, 1869. His acquaintance with their pecuniary condition commenced in 1867; he collected all the executions he had against said Kite up to the present one; had several against Miller, but could make nothing out of him from his personal estate; considered Kite good, but Miller insolvent.
3d. Hr. S. R. H. Miller was examined in behalf of the guardian’s representatives: testified that he had been acquainted with the pecuniary condition of Miller and Kite since 1857 or 1858: looked upon them at that time, and up to the disasters of the war as solvent': at the time of giving his testimony he did not think either of them solvent: thought the prime cause of their insolvency was their losses during the war. They owed debts previous to the war; during the war they made nothing, and their debts accumulated by in-terest. This accumulation of interest, and the loss of •slaves, &e., by Henry Miller, were the causes of his insolvency. The same causes apply to Kite; and, in ■addition, he lost heavily by the flood. "Witness considered that a judgment obtained against these parties, •at November court 1869, for about $1,000, could have been made of Mr.. Kite. His real estate, in 1869, was *495 worth not less than $16,000 to $18,000. The damage to his real estate by the flood witness supposed was $8,000. Miller, in 1869, owned two hundred and thirty-five acres of land, assessed at $35 per acre. Witness thought that a debt of $1,000, if judgment had been obtained in 1867 or 1868, could not have been made of Henry Miller.
In the answer of John B. Ammon, surviving administrator of Jacob Ammon, he says that after the war, by the results of which the aforesaid debtors, Miller and Kite, were reduced in their financial condition, and when it was doubtful whether or not they would be able to pay their debts, he “ offered the above mentioned bond to the wards of Jacob Ammon, but they declined to receive it, and thereupon this respondent brought suit upon it, obtained a judgment, upon which execution issued, and was returned ‘no property,5 as will appear from exhibit 2, herewith filed.55 That exhibit is a part of the record, and is a copy of said execution and return, the execution bearing date the 3d day of December 1869.
On whom should the loss of this debt of Miller and Kite fall? on the wards or on the guardian? The court below thought, and so decreed, on the wards. Whether that decree is correct or erroneous is the question we now have to solve.
We are of opinion that the decree is erroneous, and that the loss ought to fall not on the wards, but on the said guardian or his estate.
We think it extremely doubtful from the record, to say the least, whether the debt of Miller and Kite ever was regarded or intended by the guardian as a debt due to his wards. The debt of Miller, which was the consideration of the debt of Miller and Kite, was due to the father of the wards, Jacob Ergenbright, of whom. *496 it seems Jacob Ammon was administrator; and although the latter took the bond of Miller and Kite for the amount, payable to himself as “guardian for-the legatees of Jacob Argenbright,” yet this may have been a mere deseriptio persones, and he may have given his wards credit for the amount and held the bonds asjjjg own property. Whether this was his original intention or not, it seems that afterwards he so treated the matter; and that neither he nor his representatives ever made any return, or rendered any account, of the-debt as part of the estate of his wards until 1869, after the debt had become worthless, when John B. Ammon, surviving administrator of the guardian, offered-the bond to the wards as aforesaid. It appears that the accounts of the guardian and his administrator were frequently, if not regularly, settled; though some of them seem to have been destroyed by the public enemy during the war—some of them however were-preserved—and it does not appear that in any account settled before the institution of this suit, the guardian or his representatives claimed any credit for this debt, or referred to it in any way; on the contrary, in all the accounts then settled of which we have any copy or-trace in the record, that debt is included in the amount charged to the guardian and credited to the wards;, thus forming a part of the balance reported as due to the wards respectively. Now if this be the true state of the case, nothing can be plainer than that it was too late, in 1869 for the first time, for the guardian or his representative to claim credit for this debt, in the settlement of his account with his wards; and that it must remain charged to him, as it had long previously been by himself.
But if it be considered as a debt still due to the wards, and as never having been intended by the *497 guardian to be charged to himself; has it not been lost by the default of the guardian and his representatives, and are not he and they responsible for the loss of it, and chargeable with the amount of it in the settlement of the guardianship account?
We are of opinion that this question must be answered in the affirmative. When Jacob Ammon died, in 1867 or ’8, he ceased of course to be guardian of the Ergenbrights, and the estate of his wards should then, at least, have been delivered to them if of age; and if not, to another and succeeding guardian; and if none, should have been brought into court and invested under the order of the court for them. Instead of that, the bond or note never was brought into court, nor reported to the commissioner as part of the estate of the wards, and never was offered to them, nor were they ever informed of it, so far as the record shows, until 1869; but remained in the possession of the guardian and his representatives, without any suit being brought upon it until that time. Whereas, in the mean time, both the debtors, who were perfectly solvent when the debt was created, became perfectly insolvent—the principal, Miller, having been ruined by the war, and the surety, Kite, having been ruined by the war and by a flood, which happened several years thereafter. If suit had been brought for the debt at any time before 1869 it might have been made. Such suit ought to have been brought by the guardian or his representatives long before that time, supposing the debt to be still due to the wards. Certainly it was the duty of Jacob Ammon’s administrator to put the debt in suit; if not sooner, at least when Miller, the principal debtor, had become insolvent by the results of the war. There was then but one solvent debtor remaining, and he was a surety, *498 and the administrator certainly had no right to hold up the debt longer at the risk of the wards. Though Kite was still solvent, he might become otherwise, as he afterwards did, before judgment was recovered for the debt in 1869. It was a time of doubt and danger, when fiduciaries had no right to delay the collection of debts, and certainly no right to delay the institution of suits therefor, whereby security might be obtained by judgment and execution. Several, if not all, of the wards had become of age before 1869, and if the debt was considered as still due to them, they ought to have been informed of the fact, and their consent ought to have been obtained to the long indulgence which was given. •
"We are therefore of opinion that the decree of the coui’t below ought to be reversed; that the estate of Jacob Ammon ought to be held responsible for the said debt; that the report of commissioner Kewman, charging the said estate with the said debt, and not his alternate statement charging each of the said wards with one-fifth of the said debt, ought to be confirmed, and that the cause ought to be remanded to the court below for further proceedings to .be had therein in conformity with the foregoing opinion. And that liberty ought to be reserved to the representatives of said Jacob Ammon to apply, by further proceedings in this suit, for any relief to which they may be entitled against the administrators of said Jacob Ammon, or either of them, or the estates of them, or either of them, on account of the default of them, or either of them, in regard to the collection of the said debt.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the tran *499 script of the record of the order aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the estate of Jacob Ammon ought to be held responsible to the appellants for the debt due by Henry Miller and Jos. H. Kite, in the proceedings in this case mentioned; that the report of commissioner Hewman, charging the said estate with the said debt, and not his alternate statement, charging each of the appellants with one-fifth of the said debt, ought to be confirmed, and that the said decree appealed from is erroneous, and ought •to be reversed: therefore it is decreed and ordered that the said decree be reversed and annulled, and that the appellants recover of the appellee, John B. Ammon, surviving administrator of Jacob Ammon, deceased, out of the estate of the said Jacob, which is now in, or may hereafter come to, the hands of the said administrator to be administered, the costs by the said appellants expended in the prosecution of their appeal aforesaid here, for which said costs the whole estate of said Jacob, of whatever it may consist, and in whosesoever hands it may be, shall be liable.
And it is further decreed and ordered that this cause be remanded to the court below for further proceedings to be had therein in conformity with the foregoing opinion; and that liberty be reserved to the representatives of said Jacob Ammon to apply by« further proceedings in this suit in the said court for any relief to which they may be entitled against Yelverton C. Ammon and John B. Ammon, administrators of said Jacob Ammon, or either of them, or the estates of them, or either of them, on account of the default of them, or either of them, in regard to the collection of the said debt: which is ordered to be certified to the said Circuit court of Rockingham county.
Decree reversed.